UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CV-196-F

| | | |
|---|---|---|
| TICKETMASTER CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DANIEL DEVANE, | ) | |
| Defendant. | ) | |

This matter is before the court upon the Motion for Default Judgment [DE-18] by Plaintiff Ticketmaster Corporation ("Ticketmaster") against Defendant Daniel DeVane ("DeVane").

## I. PROCEDURAL HISTORY

Ticketmaster initiated this action against DeVane on November 29, 2007, alleging (1) a violation of the Anti-Cybsersquatting and Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"); (2) an infringement of Ticketmaster's trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (3) unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and (4) trademark dilution by blurring and tarnishment in violation of Section 43(c) of the Lanham Act, 15. U.S.C. § 1125(c). The record shows that DeVane was served with process pursuant to Rule 4 of the Federal Rules of Civil Procedure by personal delivery of a copy of the Summons and Complaint to him at his residence on January 16, 2008. *See* Return of Service [DE-9]. Proof of service was filed with this court on January 22, 2008. *See id.* DeVane did not file a responsive pleading to the Complaint, and the Clerk of Court for the Eastern District of North Carolina entered default against DeVane on April 3, 2008. *See* Entry of Default [DE-13].

Ticketmaster now moves for entry of default judgment against DeVane, and seeks statutory damages under the ACPA, along with injunctive relief pursuant to the ACPA and Lanham Act and attorney's fees. DeVane has not filed a response to Ticketmaster's Motion for Default Judgment.

## II. DISCUSSION

Ticketmaster's Motion for Default Judgment raises three issues for this court: First, is entry of default judgment appropriate under Rule 55? Second, has Ticketmaster adequately stated its claims such that the court may enter default judgment thereon? Third, to what relief is Tickmaster entitled?

### A. Propriety of Default Judgment

This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1338 and 1367. Service on DeVane was obtained in accordance with Rule 4 of the Federal Rules of Civil Procedure, as described above, and DeVane was, at the time of the institution of this action, domiciled within North Carolina. Accordingly, this court has personal jurisdiction over him. The Clerk of Court having filed entry of default on April 3, 2008, the court concludes that the procedural requirements for entry of default judgment have been met.

### B. Causes of Action

Although Ticketmaster meets the technical requirements for entry of default judgment, the inquiry does not stop there. It is well settled that upon default, the facts alleged in the Complaint are deemed admitted. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court, however, determines whether the facts, as alleged, support a claim and the relief sought. *Id.* In the Motion Default Judgment, Ticketmaster indicates that it seeks relief in the form of damages

2

pursuant to the ACPA, injunctive relief pursuant to the ACPA and the Lanham Act, and attorney's fees pursuant to the Lanham Act.

With respect to the claim under ACPA, the court finds that Plaintiff is entitled to judgment thereon. For a plaintiff to succeed on a claim under the ACPA, it must show that: (1) its marks are distinctive or famous; (2) the defendant's domain names are identical or confusingly similar to the plaintiff's marks; and (3) the defendant registered its domain names with a bad faith intent to profit from them. 16 U.S.C. § 1125(d)(1)(A); *PETA v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The statute lists nine non-exclusive factors a court may consider to determine bad faith.[1] The court finds

---

[1] These non-exclusive factors include:
(I) the trademark or other intellectual property rights of the person, if any, in the domain name;
(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, or affiliation, or endorsement of the site;
(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties: and
(IV) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.
15 U.S.C. § 1125(d)(1)(B)(i).

3

that Ticketmaster adequately alleges facts showing that it owned a distinctive or famous mark. Compl. [DE-1] ¶¶ 5-9 (alleging that Ticketmaster owns the "TICKETMASTER" mark, and through its extensive marketing and sales, the public has come to recognize and associate the mark with Ticketmaster and its services). Ticketmaster also adequately alleges that DeVane has registered and is using the domain name "ticketmasterevent.com" which is confusingly similar to Ticketmaster's "TICKETMASTER" mark. *Id.* at ¶¶ 14-16. Finally, the allegations in the Complaint establish that (1) DeVane has no rights or legitimate interest with respect to the "ticketmasterevent.com" name; (2) DeVane used the domain name to promote his ticketing website in direct competition with Ticketmaster, and (3) the domain name uses Ticketmaster's legal name. *Id.* at ¶¶ 19- 21. Consequently, Ticketmaster has alleged adequate facts to support a finding that DeVane registered the "ticketmasterevent.com" name with the bad faith intent to profit from the use of it. 15 U.S.C. § 1125(d)(1)(B).

Similarly, Ticketmaster is entitled to judgment on its claims for trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125(a). To prevail on claims for trademark infringement and unfair competition under the Lanham Act, a plaintiff must prove:

(1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

*PETA*, 263 F.3d at 364 (quoting 15 U.S.C. §§ 1114, 1125(a)). In this case, Ticketmaster adequately alleges that it owns the TICKETMASTER marks. Compl. [DE-1] ¶¶ 5-10. It also adequately alleges that DeVane used the TICKETMASTER marks, in commerce, and in connection with the sale of goods or services. *Id.* at ¶¶ 13-17 (alleging that DeVane used the TICKETMASTER mark in the

4

"www.ticketmasterevent.com" domain name to direct internet users to his website for his ticketing business). Finally, Ticketmaster adequately alleges that DeVane's unauthorized use and registration of the "www.ticketmaster.com" domain name is likely to cause confusion among consumers. *Id.* at ¶¶ 15-25. Thus, the allegations in the Complaint establish claims for trademark infringement and unfair competition under the Lanham Act.

Finally, Ticketmaster seeks judgment on its claim under the Federal Trademark Dilution Act ("FTDA"), 15 U.S.C. § 1125(c). The FTDA provides that the owner of a famous mark may enjoin "another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." *CareFirst of Maryland, Inc. v. First Care*, 434 F.3d 263, 274 (4th Cir.2006)(citing 15 U.S.C. § 1127). The Fourth Circuit has defined dilution as " 'the lessening of the capacity of a famous mark to identify and distinguish goods or services.' " *Id.* (quoting 15 U.S.C. § 1127). To establish a claim under the FTDA in the context of this case, a plaintiff must prove that:

> it owns valid and enforceable rights in the mark, the mark is famous and became so prior to the registration and/or use of the domain name, registration and/or use of the domain name constitutes use of the mark in commerce, and the registration and/or use of the domain name dilutes the distinctive quality of the mark.

*Graduate Mgmt. Admission Council v. Raju*, 267 F.Supp. 2d 505, 511 (E.D.Va. 2003).

Ticketmaster's allegations provide an adequate factual basis for its FTDA claim. Ticketmaster owns valid and enforceable rights in the TICKETMASTER marks. Compl. [DE-1] ¶¶ 9-10. The marks are famous and became so prior to DeVane's registration and use of the domain name, and DeVane is using the TICKETMASTER mark in commerce. *Id.* at ¶¶ 9-14. DeVane's domain name contains the TICKETMASTER mark, and would immediately be associated with

Ticketmaster. *Id.* at ¶¶ 15-16. By using the TICKETMASTER mark in the domain name, DeVane potentially prevented internet users from accessing Ticketmaster's service over the internet. Thus, DeVane has diminished the value of Ticketmaster's marks. *See, e.g., Pinehurst, Inc. v. Wick*, 256 F.Supp. 2d 424, 431-32 (M.D.N.C. 2003)(finding that defendants' registration of domain names "Pinehurstresort.com" and "Pinehurstresorts.com" diluted plaintiff's marks, "Pinehurst" and "Pinehurst Resort and Country Club"). The admitted allegations, therefore, establish that Ticketmaster is entitled to judgment on the FTDA claim.

## C. Relief

Ticketmaster seeks a permanent injunction against DeVane's infringing conduct, an award of statutory damages, and an award of attorney's fees

Both the ACPA and the FTDA provide that a prevailing plaintiff is entitled to injunctive relief. Section 1125(c)(1) provides that the owner of a famous mark is entitled to an injunction against another person's use of the mark in commerce. Additionally, the ACPA expressly provides that the "court may order the forfeiture or cancellation of the domain name or transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). Based on the factual allegations in the Complaint, which are deemed admitted by virtue of DeVane's default, the court concludes that Ticketmaster's requested injunctive relief is warranted.

Ticketmaster also seeks statutory damages under the ACPA. The Lanham Act allows a plaintiff who has demonstrated a violation of ACPA to recover statutory damages "in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). In this case, Ticketmaster is seeking $10,000.00 in statutory damages. Based on the circumstances of this case, and the fact that DeVane, in bad faith, attempted to deceive

internet concusmers and direct traffic to his competing ticket website, the court finds that $5,000.00 in statutory damages is just and reasonable.

The court also concludes that Ticketmaster is entitled to attorney's fees under the Lanham Act, which gives a court discretion to award attorney's fees in "exceptional" cases brought under the statute. 15 U.S.C. § 1117(a). The Fourth Circuit has defined "exceptional case" to be one in which "the defendant's conduct was malicious, fraudulent, willful or deliberate in nature," or in other words, the defendant "acted in bad faith." *PETA*, 263 F.3d at 370 (internal quotations omitted). The showing of bad faith necessary to establish a violation of the ACPA, however, is not alone sufficient to establish the maliciousness or willfulness necessary to recover attorney's fees. *Id.* at 369. The court finds that the admitted allegations in this case establish the necessary showing of bad faith, in that: (1) DeVane continued to use the TICKETMASTER trademarks even after receiving a cease and desist letter; (2) he failed to make an appearance in this action, and (3) he has no rights or legitimate interest in the "www.ticketmasterevents.com" domain name. *See, eg., Agri-Supply Co., Inc. v. Agrisupply.Com,* 457 F. Supp. 2d 660, 667 (E.D.Va. 2006)(determining that attorney's fees were warranted where defendant ignored requests to settle and lawsuit, and had no rights to contested domain name); *Aztar Corp. v. MGM Casino*, No. 00-833-A, 20001 WL 939070 at * 6 (E.D.Va. April 9, 2001)(concluding that attorney's fees were warranted where defendant continued with willful and bad faith infringement and dilution of plaintiff's trademark after receiving a cease and desist letter). Consequently, the court concludes that Ticketmaster is entitled to an award of reasonable attorney's fees.

7

## IV. CONCLUSION

Based on the foregoing, it is hereby ORDERED, ADJUDGED AND DECREED that:

1. The defendant, Daniel DeVane, and his agents, servants, employees, attorneys, successors and assigns and all others in active concert or participation with him, are permanently enjoined from:

> a) registering or maintaining any registration of the domain name "www.ticketmasterevents.com" or any other names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise confusingly similar to the TICKETMASTER mark or any other trade names, trademarks or service marks of Ticketmaster;
>
> b) using the domain name "www.ticketmasterevents.com" or any other names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise confusingly similar to the TICKETMASTER mark or any other trade names, trademarks or service marks of Ticketmaster;
>
> c) using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the TICKETMASTER mark or any other Ticketmaster trademark anywhere on any web site or web sites of DeVane.
>
> d) using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the TICKETMASTER mark or any other Ticketmaster trademark in any buried code, metatags, search terms, keywords, key terms, hits generating pages, or any other devices used, intended, or likely to cause any web site or web sites of DeVane to be listed by any Internet search engines in response to any searches that include any terms identical with or confusingly similar to the TICKETMASTER mark or any other Ticketmaster trademarks;
>
> e) using any names, words, designations or symbols consisting of, incorporating in whole or part, or otherwise similar to the TICKETMASTER mark or any other Ticketmaster trademark in any e-mail or other marketing solicitations sent to consumers;
>
> f) otherwise infringing Ticketmaster's trademarks;
>
> g) making any description or representation stating or implying that DeVane's goods or services, domain names or web sites are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with Ticketmaster; and

8

h) any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection or association of DeVane's domain names, web sites, products or services with Ticketmaster.

2. Plaintiff Ticketmaster have and recover of Defendant DeVane the amount of $5,000.00 in statutory damages under the Anti-Cybersquatting Consumer Protection Act; and

3. Plaintiff Ticketmaster have and recover of Defendant DeVane its reasonable attorney's fees and costs in this action   Ticketmaster is DIRECTED to file, within ten (10) days of the filing date of this order, an affidavit setting forth its attorney's fees and costs. Ticketmaster should demonstrate why such a fee is reasonable for the time and labor expended, the customary fee for like work, and the experience and ability of the attorney(s) rendering such services.

Ticketmaster's Motion for Entry of Default Judgment [DE-18] is hereby ALLOWED.

SO ORDERED.

This the 12d day of May, 2008.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge